UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JEFFREY BRITT,**<br><br>Defendant. | Case No. 25-CR-258 (JMC) |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

    The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant Jeffrey Britt be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E).

    On March 17, 2025, after serving approximately 15 years' incarceration for Second Degree Murder While Armed and Possession of a Firearm During a Crime of Violence, the defendant was released after moving to reduce his sentence under the Incarceration Reduction Amendment Act (24 D.C. Code § 403.03), and was placed on five years' supervised probation. Just three months after his release, the defendant illegally possessed a gun and fired several shots at a crowd outside of a nightclub on 9th Street in Northwest D.C. He was arrested and charged in D.C. Superior Court, and ultimately indicted in this case following DNA analysis tying him to the magazine recovered inside the gun he fired. Given these circumstances, and considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community. For the following reasons, the Court should order the defendant detained pending trial.

**FACTUAL BACKGROUND**

On June 28th, 2025, at approximately 4:45 a.m., officers with the Metropolitan Police Department were conducting routine patrol in the 1900 block of 9th St. NW. While on patrol, officers observed a large group of individuals leave the Cloud Lounge located at 1919 9th Street NW. A verbal altercation ensued outside of the location between V-1, V-2, and an unidentified male. Several officers in the area began walking towards where the altercation was happening. While officers were walking, they heard a loud bang come from the group. Officers then observed the group disperse, running away from one person, later identified as the defendant, Jeffrey Britt. Officers observed the defendant walking northbound on the East Sidewalk of 1900 9th Street NW, and stopped him.

Surveillance footage from the Cloud Lounge showed the altercation, and showed the defendant standing nearby. In the screenshot depicted below, the defendant is circled in red and the individuals engaged in the altercation are circled in yellow.

//    //
//    //
//    //



**Figure 1**

The footage then shows the defendant back up and face the group at the same time the crowd dispersed in a manner consistent with shots being fired. While all other members of the group ducked and ran away from the defendant, the defendant stood unfazed before turning around and walking northbound. Footage shows that the defendant was the only person in the group who walked northbound following the sound of gunshots.



**Figure 2**

As the defendant walked northbound, he made a throwing motion with his right hand and then moved his right arm towards his waistband area.



**Figure 3**

Officers canvassed the scene and located a firearm in front of 1933 9th Street NW next to a bicycle, and a single shell casing in front of 1923 9th Street NW. The firearm was located next to an individual, W-1. Body-worn camera footage from Sergeant Irving Bolton shows the defendant walking by the area where W-1 was standing and appearing to have his arm outstretched before continuing northbound.



**Figure 4**

The recovered firearm was a .40 caliber Glock 27, loaded with one round in the chamber and 19 rounds in a magazine capable of accepting 30 rounds. The recovered shell casing was a .40 caliber round.

**Figure 5**

Sergeant Bolton, who was one of the officers who observed the defendant walking northbound on 9th Street, was wearing body-worn camera, which captured the defendant standing at the approximate location of the shooting and lifting both arms up in a shooting motion down towards the sidewalk in the direction of those involved in the altercation.





**Figure 6**

Sergeant Bolton's body-worn camera also captured the crowd disperse, and several individuals look in the defendant's direction as they ran away. The defendant then walked northbound in the 1900 block of 9th Street NW while officers approached to initiate a stop. As the defendant walked northbound, he passed 1933 9th Street NW, which is where the firearm was recovered.

Officers spoke to W-2 on-scene, who told police they had the wrong person stopped,

indicating that someone other than the defendant shot the firearm. W-2 stated that someone in gray sweatpants had the firearm that morning, and that someone in a black hoodie is the one who shot the firearm. On-scene, W-2 provided a false name, date of birth, and phone number. When she spoke to prosecutors later, she admitted that she was intoxicated that night to the point that it impacted her memory and ability to perceive events. She also admitted that she did not see anyone possessing or using firearms in any way. She believed the individual with the black hoodie shot the firearm based on movements she observed him make near his waistband after she heard a gunshot. Officers also spoke with V-1 who indicated that someone shot at her, but that she did not see who did the shooting.

DNA analysis was conducted comparing a buccal sample taken from the defendant to swabs taken from the firearm and magazine. As to the swabs taken from firearm, the DNA profile obtained from this item indicated a mixture of at least four individuals with at least one male contributor. Due to the complex nature of this mixed DNA profile, it was inconclusive for comparison purposes. As to the swabs taken from the magazine, the DNA profile obtained from this item indicated a mixture of at least four individuals with at least one male contributor. The DNA profile was interpreted as five contributors, and it is approximately 5.4 million times more likely if the sample originated from the defendant and four unknown persons than if it originated from five unknown persons.

A NIBIN investigative lead was also developed for the recovered shell casing, which determined that there was a potential link between the recovered shell casing and the recovered firearm.

The defendant was arrested and charged by complaint in D.C. Superior Court Case Number 2025 CF2 007269. The complaint was superseded, ultimately charging the defendant with one

count of Assault with a Dangerous Weapon, one count of Possession of a Firearm During a Crime of Violence, one count of Unlawful Possession of a Fiearm (Prior Conviction), and one count of Carrying a Pistol Without a License. Trial was scheduled for October 9, 2025.

Following the results of the DNA analysis tying the defendant to the magazine inserted into the gun recovered on June 28, 2025, an indictment was returned in this Court charging the defendant with one count of Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by a Term of Imprisonment Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), and one count of Unlawful Discarding of a Firearm, in violation of 22 D.C. Code § 4503.04.

## **LEGAL AUTHORITY & ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). When determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. *See* 18 U.S.C. § 3142(g).

In making the pretrial detention determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail

how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210 and *Williams*, 798 F. Supp. at 36.

## I.     Bail Reform Act Factors Favor Detention Given Danger to the Community

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm). The facts and circumstances in this case demonstrate that there are no conditions or combination of conditions that would assure the safety of the community should he be released. See 18 U.S.C. § 3142(e)(1). All four Section 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. See 18 U.S.C. § 3142(g).

### A.     The Nature and Circumstances of this Offense Merits Detention

Here, the defendant not only illegally carried a firearm in the community despite being a felon convicted of Second-Degree Murder, but he drew that firearm and fired it at several people in a crowded area. Of course, the defendant's possession of this firearm alone posed an incredible danger to the community. *See United States v. Blackson*, 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a loaded firearm), *aff'd* 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). That danger manifested itself on June 28, 2025, when the defendant put at risk the numerous people who were publicly congregating outside the Cloud Lounge.

This case demonstrates why guns such as the one recovered here is so dangerous in the

hands of a convicted felon, particularly here where the defendant has previously been convicted of a homicide. And while the defendant appears to have only fired a single shot that night, the defendant's gun was loaded with 20 rounds (1 in the chamber and 19 in the magazine), posing an even greater risk of danger to those on 19th Street that night. Accordingly, the nature and circumstances of these offense weighs strongly in favor of detention.

### B. The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, also favors detention. Here, two separate videos—surveillance from Cloud Lounge and Sergeant Bolton's body-worn camera—captured the shooting and support the defendant's identity as the shooter. The photographs depicted above provide a glimpse into what these videos show. The Government will provide annotated videos to the Court under separate cover as Exhibits 1 & 2. In addition, the DNA analysis provides very strong support for the inclusion of the defendant's DNA on the profile obtained from the swabs of the magazine inserted into the recovered firearm.[1] As this Court has noted, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194 at *10. Because that is true here, the strength of the evidence against the defendant favors detention.

---

[1] Due to the complex nature of the profile taken from the swabs of the recovered firearm, no conclusions could be drawn. This is not unusual when there is a complex mixture of numerous individuals within the profile. Thus, while this result does not provide further support for the defendant's possession of the firearm, nor does it provide any support for the defendant's exclusion. It is simply a neutral factor in the strength of the evidence analysis.

### C.     The Defendant's History and Characteristics Merit Detention.

The third factor—the history and characteristics of the defendant—strongly favors detention. On November 11, 2009, after leaving a funeral service for someone killed by gunfire, the defendant and two others—all carrying loaded firearms—opened fire on the victim who was attempting to board a Metrobus. The victim's body was riddled with bullets, and he died hours later from his wounds. The defendant pleaded guilty to Second-Degree Murder While Armed and Possession of a Firearm During a Crime of Violence, and was sentenced to concurrent sentences totaling 240 months' imprisonment followed by 5 years' supervised release. Had the defendant served his entire sentence, he would have been detained until November 2029. The defendant, however, moved to reduce his sentence under the IRAA. On March 14, 2025, the defendant was resentenced, and the remainder of his sentence was suspended. On March 17, 2025, he was released.

Within weeks, the defendant was in violation of his probation. On April 17, 2025, the defendant submitted a bogus test sample to probation, and asserted that he did it because he did not want to test positive for alcohol. He was given a warning, but on May 1, 2025, the defendant again submitted a bogus test sample, again claiming it so he would not test positive for alcohol. From the very beginning, the defendant demonstrated his unwillingness to take responsibility for his actions, or to comply with his conditions of release.

Of course, even more concerning is that approximately three months after being given a second chance, and being released early from his 20-year sentence for participating in the gunning down of a man on the street, the defendant was once again found in possession of a firearm, and again shooting it in the direction of others. This time was the defendant's opportunity to be on his best behavior, given his recent release and the time he could serve if he violated his probation.

The defendant, however, squandered that opportunity and instead decided to engage in the same kind of violent behavior that resulted in his incarceration in the first place. The defendant's actions in this case demonstrate that he remains either unwilling or unable to comply with the law, and continues to carry extremely dangerous, illegal weapons and use them violently. He should be detained pending trial.

### D.    The Defendant Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by the defendant's release, similarly weighs in favor of detention. This case is analogous to what then–Chief Judge Howell recently stated, "[a]t the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 WL 1778194, at *11. The defendant's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). That danger was realized here when the defendant fired his illegal gun in the direction of others.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that the defendant is a risk of committing acts

of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283). Here, the defendant had only recently been released and placed on probation when he was found firing his gun in a crowded, public place. The same risk persists if the defendant were released in this case. The Court can have no confidence that the defendant will abide by court orders and refrain from illegally possessing (or firing) a gun if released.

All of the factors the Court must consider point to one conclusion—the defendant should be detained pretrial.

## CONCLUSION

Because all four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, the United States respectfully requests that the Court issue an Order granting the United States' motion that the defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:   */s/ John Parron*
John Parron
PA Bar No. 324503 / N.Y. Bar No. 5808522
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
601 D Street NW
Washington, D.C. 20530
(202) 252-6885
John.Parron@usdoj.gov

Dated: September 7, 2025